IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MARVIN REEVES                                                                                    PLAINTIFF

　　　　　v.　　　　　　　　Civil No. 6:11-cv-06047

RAY HOBBS, Director of the
ADC, Central Office; B. HOLLIMAN,
Review Officer, Malvern Unit; OFFICER
JUDGE LANGSTON, Malvern Unit;
JAILER TAYLOR, Malvern Unit; WIGGINS,
Malvern Unit; CAPTAIN PARKS, Malvern
Unit; LIEUTENANT DANIELS, Malvern
Unit; SERGEANT VIA, Malvern Unit;
MAJOR McHAN, Malvern Unit; and
DEPUTY KING, Malvern Unit                                                       DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Marvin Reeves, filed this action pursuant to the provisions of 42 U.S.C. § 1983.

He proceeds *pro se* and *in forma pauperis*.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and

(3)(2013), the Honorable Robert T. Dawson, United States District Judge, referred this case to the

undersigned for the purpose of making a report and recommendation.

The events that are the subject of this action occurred while Plaintiff was incarcerated at the

Ouachita River Correctional Unit (ORCU) of the Arkansas Department of Correction (ADC) located

in Malvern, Arkansas.  While incarcerated at the ORCU, Plaintiff maintains the Defendants

retaliated against him for utilizing the grievance process, failed to protect him, falsified documents,

coerced him, and falsely filed disciplinary charges against him.

Currently pending before me for report and recommendation is a summary judgment motion

(ECF No. 37) filed by the Defendants. Plaintiff filed a response (ECF No. 48) to the motion.  The

motion is ready for decision.

-1-

## 1. Background

On August 5, 2010, Plaintiff was housed in 11 barracks--cell 3. *Plaintiff's Response* (Doc. 48)(hereinafter *Resp.*) at ¶ 3. Plaintiff's cell-mate was Steven Colley. *Id.* at ¶ 4. That day, Plaintiff was involved in a physical altercation with Colley. *Id.* at ¶ 5(A). As a result of the altercation, both Plaintiff and Colley were given disciplinary charges. *Id.* at ¶ 5(B). Plaintiff was charged with three rule violations: failure to obey orders; assault; and battery. *Id.* at ¶ 5(C).

Plaintiff was given a hearing on August 13, 2010. *Resp.* at ¶ 6. Plaintiff was found guilty of failure to obey an order of the staff and not guilty of the other two charges. *Id.* at ¶ 7. As a sanction, Plaintiff's commissary, phone, and visitation privileges were suspended for 60 days and he was given 30 days of punitive isolation. *Id.* at ¶ 8. However, the entire punitive isolation was suspended. *Id.* Plaintiff appealed the decision to the warden, the administrator, and the director. *Id.* at ¶ 9. All upheld the decision. *Id.*

On August 23, 2010, Plaintiff submitted a grievance, 0R-11-00418, in which he states he had given evidence against a nurse who was later fired. *Resp.* at ¶ 24(A). He stated he was being labeled a snitch and that he feared for his safety from other inmates. *Id.* at ¶ 24(B). He also stated that staff members were retaliating against him. *Id.* at ¶ 24(C). He was advised it was a non-grievable issue but that he should speak to the program head as well as security. *Id.* at ¶ 24(D). Plaintiff did not appeal this decision until June 9, 2011. *Id.* at ¶ 24(E). His appeal was determined to be untimely. *Id.* at ¶ 24(F). Plaintiff states he did not immediately file an appeal because he was told the issue was non-grievable. *Id.* at ¶ 24(I).

Despite the untimeliness of the appeal, the Warden was directed to investigate this matter to ensure Plaintiff's safety was not being jeopardized. *Resp.* at ¶ 24(G). To Plaintiff's knowledge, no

investigation occurred. *Id.* at ¶ 24(H).  He states he was never questioned and heard nothing about an investigation. *Id.*

On September 5, 2010, Corporal Langston was working Barracks 12. *Resp.* at ¶ 10. Correctional Officer Taylor entered the barracks with Plaintiff to feed inmates on barracks arrest, protective custody, and 48 hour relief. *Id.* at ¶ 11.  Plaintiff recognized Colley and informed Taylor that he had been involved in an altercation with Colley. *Id.* at ¶ 12.  Corporal Langston informed Plaintiff to put the food tray down, back away from Colley's view, and not to approach Colley's cell. *Id.* at ¶ 13.

At this point, the versions of what occurred next differ.  According to the disciplinary violation written by Langston, Plaintiff tried to walk past him to approach Colley's cell. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) E.  Langston indicated that he gave Plaintiff two direct orders to get away from Colley's cell until he had been served his meal. *Id.*  Once Langston opened the trap door to feed Colley, Langston reported that Plaintiff approached and began taunting Colley who became very agitated. *Id.* at ¶ 16.

According to Plaintiff, he did try to go around Langston, but in an attempt to continue feeding other inmates. *Resp.* at ¶ 14.  Plaintiff denies Langston gave him direct orders to get away from Colley's cell. *Id.* at ¶ 15.  Plaintiff states Langston had "no reason to" give him a direct order. *Id.* Plaintiff points out he was the one who said he could not feed Colley because he had the Plaintiff on his enemy alert list. *Id.* at ¶ 16.  When Colley saw the Plaintiff, he began kicking the door. *Id.*

Regardless of the version of events that applies, Plaintiff was charged with four disciplinary violations: provoking or agitating a fight; insolence to a staff member; failure to obey orders; and refusal to participate in a treatment program. *Resp.* at ¶ 16.  During the hearing, Plaintiff stated his

belief that the disciplinary was in retaliation for him informing staff members that a nurse was bringing contraband into the facility. *Id.* at ¶ 19. He asked to be transferred to another unit. *Id.* Plaintiff was found guilty of provoking or agitating a fight and failure to obey an order of staff. *Id.* He appealed to the warden, the administrator, and the director. *Id.* at ¶ 20. The findings of the hearing officer were upheld. *Id.*

On September 6, 2010, Plaintiff's cell-mate told Corporal Hughes that Plaintiff planned to masturbate on her that night. *Resp.* at ¶ 21(A). Later that evening, Hughes observed Plaintiff standing at his toilet. *Id.* at ¶ 21(B). Plaintiff maintains he had simply gotten up to urinate; however, because of what his cell-mate had reported to Hughes she just assumed he was masturbating. *Id.*

Plaintiff was charged with disciplinary violations. After a hearing, Plaintiff was found guilty of indecent exposure, making profane/obscene gestures, and any felony act or misdemeanor. *Resp.* at ¶ 22(A). Plaintiff's commissary, phone and visitation privileges were suspended for sixty days. *Id.* at ¶ 22(B). He was given thirty days of punitive isolation and his class was reduced. *Id.*

On September 8, 2010, Plaintiff was issued another disciplinary violation. *Resp.* at ¶ 23(A). Plaintiff asked Corporal Murdock to hit him so that he would be transferred to the maximum security unit. *Id.* Plaintiff maintains he was merely being sarcastic. *Id.* at ¶ 23(A).

Plaintiff was charged with two rule violations: failure to obey the order of staff; and asking/offering inducement. *Resp.* at ¶ 23(C). After a hearing Plaintiff was found guilty of both rule violations and was sentenced to 25 days of punitive isolation. *Id.* at ¶ 23(D). He did not appeal this conviction. *Id.* at ¶ 23(E).

On September 27, 2010, Plaintiff submitted a grievance which was assigned the number OR-10-00428. *Resp.* at ¶ 25(A). In the grievance, Plaintiff complained that he had agreed to waive grievance 0R-10-00398 and OR-10-00408, in return for an immediate transfer to another unit.

-4-

However, Plaintiff stated Ms. Holliman did not get him transferred. *Defts' Ex.* K. Plaintiff states he was offered an immediate transfer but his transfer did not come for thirty-four (34) days. *Resp.* at ¶ 25(B). Plaintiff felt that he had been forced or coerced into signing the waiver. *Id.* at ¶ 25(C). Holliman denied that she had coerced Plaintiff in anyway. *Id.* at ¶ 25(D).

Plaintiff's grievance was denied and he was told it was a non-grievable issue. *Resp.* at ¶ 25(E). Plaintiff appealed and the warden found that he had, by his own admission, agreed to the grievance waiver in return for an immediate transfer and that he had in fact been transferred. *Defts' Ex.* K. Plaintiff again asserts that his transfer was not immediate. *Resp.* at ¶ 25(F).

Plaintiff appealed to the administrator and stated that he had agreed to waive the grievances but only for an immediate transfer. *Resp.* at ¶ 25(H). Plaintiff indicated he was not transferred for 34 days. *Id.* Plaintiff was transferred to the East Arkansas Regional Unit on October 20, 2010. *Id.*

On October 19, 2010, Plaintiff submitted a grievance which was assigned number OR-10-00492. *Resp.* at ¶ 26(A). While he was in isolation, Plaintiff called out to Major McHan to speak with him about the officers not making rounds to pick up informal grievances. *Id.* at ¶ 26(B). In response, Plaintiff maintains Lieutenant King called Plaintiff a snitch. *Id.* at ¶ 26(C). Plaintiff believed that King's conduct was in retaliation for Plaintiff having provided information that resulted in a nurse being fired. *Id.* at ¶ 26(D). Plaintiff was told King denied making the statement and that Lieutenant Roy advised Plaintiff to request a form as directed by the policy. *Id.* at ¶ 26(E). Plaintiff appealed to the warden and deputy director. *Id.* at ¶ 26(F). Both denied his appeal. *Id.* Plaintiff did not appeal to the Director. *Id.* at ¶ 26(G).

Plaintiff was, and is, aware of the fact that the ADC has a grievance procedure. *Resp.* at ¶ 27. Defendants' Exhibits A & B are the grievance procedures in effect during the relevant time period. *Id.* at ¶ 28.

-5-

The grievance procedure consists of a three step process. *Resp.* at ¶ 29; *Defts' Exs.* A & B. These steps require a prisoner to submit: (1) an informal resolution with the designated problem solver within 15 working days of the incident; (2) a grievance with the Warden within three working days of the denial of the informal resolution; and (3) an appeal to the ADC Deputy/Assistant Director within five working days of the Warden's decision. *Id.* An inmate may also appeal to the Deputy Director if he does not receive a response from the Warden within the time provided. *Resp.* at ¶ 30; *Defts' Exs.* A & B.

Administrative Directive 09-01 provides that:

Grievances must specifically name each individual involved for a proper investigation and response to be completed by ADC. Inmates must fully exhaust the grievance prior to filing a lawsuit. Inmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties.

*Resp.* at ¶ 31; *Defts' Ex.* B at pg. 4. . The grievance form also advises inmates to include the name of all personnel involved. *Resp.* at ¶ 33.

AD 09-01 also provides:

N. Prison Litigation Reform Act Notice

Inmates are hereby advised that they must exhaust their administrative remedies as to all <u>defendants at all levels of the grievance procedure before filing a Section 1983</u> lawsuit and Claims Commission claim. If this is not done, their lawsuits or claims may be dismissed immediately. Inmates must attach a copy of the Chief Deputy/Deputy/Assistant Director's response to any petition or complaint; otherwise the court or commission may dismiss the case without notice. Inmates are also advised that they shall be subject to paying filing fees in Federal Court pursuant to the Prison Litigation Reform Act of 1996.

*Resp.* at ¶ 32; *Defts' Exs.* A at pg. 18 and B at pg. 17.

The grievance procedure provides that inmates should address only one issue per grievance. Specifically, AD09-01 states:

The Unit Level Grievance Form should only address one problem/issue and not multiple problems/issues.  An inmate must use a separate form for each issue.  Only one issue will be addressed and additional problems/issues contained in the grievance will not be considered as exhausted.  Remember that exhaustion of a grievance is required prior to filing a lawsuit under the Prison Reform Act of 1995.

*Resp.* at ¶ 34(A); *Defts' Ex.* B at pg. 5.

In responding to Plaintiff's grievance, 0R-10-00492, both the warden and the deputy director only acknowledge and respond to his allegation that King called him a snitch.  *Resp.* at ¶ 34(B).  Although he knew he could not raise multiple issues in the same grievance, Plaintiff understood "it to be possible [to address multiple issues] if it all occurred in the same day."  *Id.* at ¶ 34(C).

Plaintiff was continually housed in insolation and/or segregation from September 7, 2010, through January 2011.  *Resp.* at ¶ 35.  His stay at ORCU ended, however, with his transfer to the East Arkansas Regional Unit on October 20, 2010.

**2. Summary Judgment Standard**

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient

evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3.  Discussion

Defendants move for summary judgment on the following grounds: (1) Plaintiff failed to properly exhaust his administrative remedies; (2) grievance 0R-10-00428 concerning Holliman's refusal to provide him an *immediate* transfer is subject to dismissal because no constitutional claim is stated; (3) the retaliatory discipline claim fails because Plaintiff was issued valid disciplinary charges for actual rule violations; (4) the failure to protect claim fails because Plaintiff was not subjected to any risk of harm and Defendant King is entitled to qualified immunity; (5) the claims against the supervisory Defendants fail because respondeat superior is not a basis for liability under § 1983; and (6) the claims against Defendants Taylor and Parks should be dismissed as they had no involvement in the alleged constitutional violations.  Each argument, or so many as are necessary, will be addressed in turn.

### (A).  Exhaustion of Administrative Remedies--OR-11-00418

Defendants maintain the Plaintiff failed to properly exhaust grievance number OR-11-00418 which concerned his being labeled as a snitch and retaliated against after having given information that resulted in a nurse later being fired.  Plaintiff asserts that he did not appeal the grievance response at the time he received it because he was advised it dealt with a non-grievable issue.

While exhaustion is required by the PLRA and dismissal of an unexhausted claim is mandatory, I do not believe Defendants' may rely on exhaustion as a defense in this case.  Plaintiff

was specifically advised that the issues addressed were "[n]on-grievable due to be (sic) an anticipated event." *Defts' Ex.* J at pg. 1; *see also Defts' Ex.* A at pgs.2-33, III(G)(listing of non-grievable matters including (6) "anticipated events (*i.e.* events or activities which may or may not occur in the future"). "The non-grievability of [the] complaint through the grievance process makes that remedy unavailable under the PLRA, and thus he does not have to pursue that remedy to exhaust his claim." *Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006)(citations omitted); *see also Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005)("a prisoner need not press on to exhaust further levels of review once he has . . . been reliably informed by an administrator that no remedies are available."). The grievance policy also lists anticipated events as being non-grievable. *Defts' Ex.* A at pg. 3. Thus, Plaintiff's step one grievance submitted on August 23, 2010, was treated as falling within the category of complaints called "anticipated events" and those types of issues were expressly considered non-grievable. *Defts' Ex.* J.

Defendants also maintain that grievance OR-11-00418 is not proper because Plaintiff did not properly identify the personnel who he alleges retaliated against him. Defendants point out that inmates are directed to "name each individual involved" or their case will be subject to dismissal. *Defts' Ex.* B at pgs. 4 & 17; *Defts' Ex.* A at pg. 18. Further, they point out the grievance form directs inmates to include the name of all personnel involved. This argument also fails. Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because Plaintiff failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and it too.

### (B).  Claims against Barbara Holliman--OR-10-00428

Defendants maintain that Plaintiff does not allege a cognizable claim against Holliman because she did not deny Plaintiff access to the grievance procedure.  In this grievance, Plaintiff asserts that on September 16, 2010, Holliman asked him to waive two grievances he filed, not otherwise at issue in this lawsuit, in return for an *immediate* transfer.  Plaintiff submitted the formal grievance, step two in the procedure, on September 28, 2010.  Plaintiff was not transferred until October 20, 2010.  *Resp.* at ¶ (I); *Defts' Ex.* K.  The Warden's decision was not rendered until October 22nd by which time Plaintiff had been transferred.

I agree that Plaintiff's claim that Holliman denied him access to the grievance procedure is subject to dismissal.  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)(no constitutional right to a grievance procedure).   In fact, these claims have already been dismissed.  (ECF Nos. 18 & 23).  I also agree that Plaintiff had no constitutional right to a transfer, immediate or otherwise.  *See e.g., Cf. Olim v. Wakinekona*, 461 U.S. 238, 245 (1983)(no justifiable expectation for incarceration in any particular prison).

However, Plaintiff's claim is that Holliman's failure to immediately transfer him, or her delay of his transfer, was in itself a retaliatory act and caused him to be subjected to further harassing and retaliatory acts on the part of others.  *Defts' Ex.* K.  These claims will be addressed below.

### (C) Retaliatory Discipline/Retaliatory Conduct Claims

Defendants maintain any retaliatory discipline claim fails because Plaintiff was charged with, and found guilty of, rule violations in connection with each incident.  "An inmate may maintain a cause of action for retaliatory discipline . . . where a prison official files disciplinary charges in retaliation for an inmate's exercise of constitutional rights." *Hartsfield v. Nichols*, 511 F.3d 826, 831

-10-

(8th Cir. 2008). "A prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007).

It has been held that "if the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules and regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail. *Goof v. Burton*, 7 F. 3d 734, 738 (9th Cir. 1993). "[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008).

Plaintiff was written up for disciplinary violations on August 5, 2010, by Officer Parker, September 5th, by Corporal Langston, September 6th by Corporal Hughes, and on September 8th by Corporal Murdock.[1] *Defts' Exs.* C & E-H. After a hearing, Plaintiff was found guilty of at least some of the rule violations occurring on each of these dates. There is no suggestion in the record that the hearing officer was not impartial. The convictions preclude these claims.

Plaintiff also claims that Holliman retaliated against him by coercing him to agree to drop two grievances in return for immediate transfer and then purposely delayed his transfer for thirty-four days. Plaintiff does not believe a transfer thirty-four days later constitutes an "immediate" transfer.

Just as with retaliatory discipline claims, "actions taken in retaliation for an inmate's filing of a grievance are actionable under 42 U.S.C. § 1983." *Nelson v. Shuffman*, 603 F.3d 439, 450 (8th

---

[1] Neither Corporal Hughes, Officer Parker, nor Corporal Murdock are named Defendants.

Cir. 2010)(citation omitted).  To prevail Plaintiff must show "1) that he engaged in a protected expression, 2) he suffered an adverse action, and 3) the adverse action was causally related to the protected expression." *Id.*

The record does not contain any information on who has the authority to approve a transfer, the time period typically involved in getting an inmate transferred, or whether Holliman in fact delayed the transfer a period of time.  Certainly on this record, there are questions of fact that preclude summary judgment in Holliman's favor.

### (D) Failure to Protect & Qualified Immunity

According to Plaintiff, Major McHan, Lieutenant Dickers, and Lieutenant King where in isolation, when Plaintiff called out to McHan regarding no officers being available to sign informal grievances. *Defts' Ex.* L at pg. 1.  Plaintiff maintains King responded: "go ahead and snitch to the major."  King, of course, denies having called the Plaintiff a snitch.  Even if he did call Plaintiff a snitch, he maintains the claim must fail because taken in proper context it is clear that he was not attempting to incite other inmates to harm Plaintiff.  He also maintains he is entitled to qualified immunity.

To prevail on his failure to protect claim, Plaintiff must first prove he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "This is an objective requirement to ensure the deprivation is a violation of a constitutional right." *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011)(citation omitted).  Second, Plaintiff must "establish the prison officials were deliberately indifferent to inmate health or safety.  This is a subjective requirement, mandating the prisoner prove the official both knew of and disregarded an excessive risk to inmate health or safety." *Id*. (citation and internal quotation marks omitted).

The Eighth Circuit Court of Appeals has "recognized that an inmate who is considered a snitch is in danger of being assaulted or killed by other inmates." *Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008).   In *Irving*, the Eighth Circuit concluded that being labeled a snitch by a guard, violates the guard's duty to protect inmates. *Id.*

Defendants suggest *Irving's* holding is inapplicable to this case.  Specifically, they ask the Court to review the context in which the alleged statement was made.  Defendants contend *Irving* is inapplicable because it involved multiple occasions on which the Plaintiff had been labeled a snitch and an effort was made to incite other inmates to take action.  Instead, they assert that the heart of the matter in this case is an employment matter.  Defendants fail to state how the inmates who overheard the "snitch" comment knew that it was made in reference to an employment matter.

The Defendants in *Irving* were alleged to have:  threatened to kill the Plaintiff; opened a cell door to allow another inmate to attack the Plaintiff; offered a bounty to any inmate who attacked Plaintiff; provided an inmate with a razor blade; and labeled Plaintiff a snitch on multiple occasions. *Irving*, 519 F.3d at 445. However, the case was against multiple defendants and involved multiple claims. *Id.* at 450.  Thus, the claim regarding being labeled a snitch was separately addressed. *Id.* The Eighth Circuit concluded that being labeled a snitch by a guard violates a guard's duty to protect inmates. *Id.* at 451.

Defendants' reliance on *Norman v. Schuetzle*, 585 F.3d 1097, 1110 (8th Cir. 2009) is also misplaced.  The Court there held that the guard's actions *were not* sufficiently analogous to labeling an inmate a snitch, "a term that is recognized as creating an obvious risk of danger to inmates. . . . Labeling an inmate a snitch informs other prisoners that the inmate has gotten other inmates in

-13-

trouble, and the cases are replete with the harm that comes from being labeled a snitch." *Id.* at 1110-1111.

Clearly, there is an issue of fact here. Plaintiff maintains he was labeled a snitch in front of other inmates. King denies calling Plaintiff a snitch. Other than making similar statements in connection with OR-11-00418, the record contains no witness statements, no audio recording, or any other evidence regarding this event. At the summary judgment stage, we are not free to adopt one version of the events over another.

Defendants maintain that Plaintiff was not placed in any substantial risk of harm because he was physically separated from other inmates. Plaintiff's step one grievance was submitted on August 23, 2010, *Defts' Ex.* J, and from September 7th until his transfer to the EARU. Plaintiff agrees that he was continually housed in isolation and/or segregation, *Resp.* at ¶ 35. However, the Court is given no facts regarding the alleged segregated housing. The Court does not know whether there were periods of the day that Plaintiff was in the company of other inmates, whether inmates cleaned their own cells or trustees were utilized, etc. In short, the Court has no information regarding Plaintiff's contact with other inmates. His segregated housing therefore cannot be a dispositive factor. Additionally there was the period of time between August 23rd and September 7th before he was placed in segregated housing.

King claims he is entitled to the protection afforded by qualified immunity. "Qualified immunity is a defense available to government officials who can prove that their conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carroll v. Pfeiffer*, 262 F.3d 847, 849 (8th Cir. 2001)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v.*

-14-

*Bryant*, 502 U.S. 224, 229 (1991)(*quoting, Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).  The inquiry is normally one of pure law.  *J.H.H. v. O'Hara*, 878 F.2d 240, 243 (8th Cir. 1989).

In order to overcome claims of qualified immunity, Plaintiff must also show that his constitutional rights were clearly established.  A right is clearly established if its contours are sufficiently clear that a reasonable official would have fair warning of the type of action that would violate that right.  The clearly established law provides that a detention officer violates his duty to protect when he labels an inmate a snitch.  *Irving*, 519 F.3d at 451.  As discussed above, there is a question of fact as to whether King labeled Plaintiff a snitch. I cannot at the summary judgment stage, resolve factual disputes in King's favor or make credibility determinations.  *See e.g., Wilson v. Lawrence County*, 260 F.3d 946, 951 (8th Cir. 2001)("arguments asserting qualified immunity rest largely on ignoring disputed facts in the record and asking this court to resolve factual disputes in [defendant's] favor.").

### (E) Supervisory Defendants

Defendants Daniels, Via, McHan, and Hobbs argue that the supervisory claims against them fail because respondeat superior is not a basis for liability.  They maintain they cannot be held liable for the acts of the other Defendants.

As supervisors, Defendants are "only liable for [their] . . . own misconduct and [are] not accountable for the misdeeds of [their] agents under a theory such as respondeat superior." *Whitson v. Stone County Jail*, 602 F.3d 920, 928 (8th Cir. 2010).  "A supervisor can be found liable under § 1983 for deliberate indifference if he is aware of a substantial risk of serious harm, even if he is not aware that harm has, in fact, occurred." *Kahle v. Leonard*, 477 F.3d 544. 551-52 (8th Cir. 2007). "[T]o maintain an action for training or supervisory liability, a plaintiff must show the failure to train

or supervise caused the injury." *Moore v. City of Desloge*, 647 F.3d 841, 849 (8th Cir. 2011).  A supervisor is liable "when the supervisor's corrective inaction constitutes deliberate indifference" or tacit authorization.  *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002)(citation omitted).

Evidence of the surrounding circumstances can be used to prove the required element of subjective knowledge.  *Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998).  "The question of whether the official knew of the risk is subject to demonstration, like any other question of fact, by inference from circumstantial evidence."  *Id.*  (internal citation omitted).

In this case, I agree that there is no basis upon which the supervisory Defendants can be held liable.  Simply put, the record contains no evidence that Defendants were "aware of a substantial risk of serious harm, even if [they were] not aware that harm has in fact occurred."  *Kahley*, 477 F.3d at 552.

### (F) Corporal Taylor and Captain Parks

With respect to Taylor and Parks, the Court agrees no basis of liability exists for them.  The only allegation regarding Taylor was that he was present when the incident with inmate Colley occurred.  Similarly, the only allegation made regarding Parks is that he was "informed" of Plaintiff's August 23, 2010, grievance.  *See e.g., Ripson v. Alles*, 21 F.3d 805, 808-09 (8th Cir. 1994)(§ 1983 liability requires personal or direct involvement in alleged constitutional violation).

### 4.  Conclusion

I therefore recommend that the summary judgment motion (ECF No. 37) be granted in part and denied in part.  Specifically, I recommend it be granted with respect to all claims against: Ray Hobbs; Judge Langston; Jailer Taylor; Wiggins; Captain Parks, Lieutenant Daniels; Sergeant Via; and Major McHan.  These Defendants should be dismissed from the lawsuit.  I recommend that the

motion be denied with respect to Officer B. Holliman (retaliation claim) and Deputy King (failure to protect claim).

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of September 2013.


/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE